### Davis, Director General, et al. v. Davis.

### Davis, Director General, et al. v. Rodgers' Admx.

### Davis, Director General, et al. v. Bush's Administrator.

(Decided June 23, 1922.)

Appeals from Woodford Circuit Court.

1.  Railroads—Crossings—Signals.—When there is sufficient evidence on the question of whether a locomotive approaching a highway crossing, at grade, gave the statutory signals, the question is for the jury.

2. Railroads—Crossings—Separate Actions—Trial.—Where three persons are injured in a crossing accident by the same train, and three separate suits are instituted, they may be tried together, the facts being the same.

3. Railroads—Crossings—Care in Approaching.—While it is proper for the trial court to instruct the jury that persons riding in an automobile along a public highway approaching a railroad crossing should use such care as may be usually expected of ordinarily prudent persons to learn of the approach of the train to the crossing, and to keep out of its way, the court should not instruct the jury that it is the duty of such travelers, upon the highway at such time and place, to exercise such care at such time and place as would enable the said travelers to discover the approach of the train, if one were approaching, and to avoid being struck by it, for this puts the whole burden upon the highway traveler and relieves the railroad of all duty. It is merely the duty of the traveler upon the highway, when approaching a railroad crossing, to exercise such care for his protection as may be expected of reasonably prudent persons under like circumstances.

WALLACE & HARRISS and HUNT, NORTHCUTT & BUSH for appellants.

FRANKLIN, TALBOTT & CHAPMAN for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

These three cases growing out of the same accident, were consolidated, tried and heard together in the lower court. A railroad train operated by the Director General over the L. & N. tracks was going from Frankfort towards Lexington, and was near Payne's Station when it struck and demolished a Ford car on a highway crossing, killing two of the three occupants and seriously injuring the third. Three separate actions were commenced, one by Davis, the driver of the car, and who was not killed; another by the administratrix of Rodgers, one of the killed, and the third by the administrator of Bush, a colared boy killed in the same accident. The facts in each case were the same, but the trial judge gave separate instructions in each case. The jury, after consideration of the three cases, returned a verdict in favor of the appellee, E. L. Davis, and against the Director General of Railroads, and James W. Smith, the engineer in charge of the train, in the sum of $5,375.00, $5,000.00 of which was for injuries to his person and $375.00 for the loss of his automobile. The jury also returned a verdict in favor of the administratrix of Rodgers against the same defendants for the sum of $20,000.00; and another verdict in

favor of the estate of William Henry Bush, colored, in the sum of $5,000.00. The Director General of Railroads and the engineer, Smith, are prosecuting this appeal.

Appellants filed motion and grounds for new trial in each of the cases in which they set out in substance the following reasons for vacating the judgment: (1) Because the court erred in admitting incompetent, irrelevant and immaterial evidence for the plaintiff over the objection of the defendant; (2) error in refusing competent evidence offered by appellants; (3) the court erroneously refused to direct a verdict in favor of appellants at the conclusion of all the evidence; (4) because the court erred in failing to give instructions offered by appellants; (5) the court erred in giving the instructions on which the verdict was returned; (6) the verdict and judgment are contrary to and not supported by the evidence; (7) the verdict and judgment are contrary to law; (8) the verdict is excessive, appearing to have been given under the influence of passion and prejudice.

On this appeal only one ground is seriously urged by appellants for a reversal of the judgment. In brief of counsel for appellants it is said: "While the complaint made against the appellants in the pleadings was a general charge of negligence, yet the evidence adduced by appellees on the trial, the instructions offered by them and given by the court, demonstrate that they relied for a recovery solely upon the claim that appellants failed to give the statutory warning by whistle and bell of the approach of the train to the crossing.

"The appellees introduced witnesses who testified, mostly negatively, that the statutory signals were not given. The appellants presented witnesses who gave evidence, mostly direct, that the statutory signals were given. There is a contrariety of evidence as to whether the signals were or were not given; and it is therefore needless to discuss the evidence of the many witnesses who testified that the signals were given, or that of those who said that they were not given, or of those who did not hear them, or to argue the instructions that were given to the jury which relate to the duty of appellants to signal."

It is further said in brief for appellants that one traveling on the highway, either on foot or by automobile, cannot see from the point where the automobile stopped on approach to the track near the crossing for more

than a few yards up the railroad in the direction from which the train came. This stop was estimated by Davis to have been made about twelve feet from the nearest rail of the track, but when he located the position of the car it measured about 23½ to 26 feet. Standing on the ground or on the running board of an automobile at that point one's view is obstructed by a rock fence covered with shrubbery or by trees so that one cannot see or know of the approach of a train until it gets within a few yards of the highway crossing. This is conceded by appellants and is thoroughly proven by witnesses.

But appellants insist that appellee Davis and the decedents could have seen the approaching train had they driven a little closer to the tracks before the automobile was stopped, and their failure to do so was such contributory negligence as should defeat a recovery. But we do not think appellees were guilty of contributory negligence on this account, nor at all. When one drives up within twenty odd feet of the tracks of a railroad and stops his machine and carefully looks and listens for the approach of a train and does not see or hear one, he is exercising at least as much care, if not more, than that which is generally employed by reasonably prudent persons under like or similar circumstances.

Appellants complain that the trial court refused to give two instructions, "A" and "B," offered by them and which read as follows:

"It was the duty of the plaintiff, E. L. Davis, and the decedents, J. Claude Rodgers and William Henry Bush, in approaching the crossinig refered to in the evidence to use such care as may be usually expected of ordinarily prudent persons to learn of the approach of the train of defendant, Walker D. Hines, Director General of Railroads, and keep out of its way, *and to do this at such time and place as would enable said Davis and said decedents to discover the approach of a train, if one was approaching, and to avoid being struck by it,* and if the jury believe from *the evidence that said* Davis and said decedents, or either of them, failed to exercise such care, and that but for such failure on the part of either of them the accident complained of in these actions would not have occurred, the jury will find for the defendants even though they may also believe the defendants were guilty of negligence.

"B. If the jury believe from the evidence that the exercise of ordinary care on the part of plaintiff, E. L.

Davis, and the defendants, J. Claude Rodgers and William Henry Bush, required that they look or listen for the approach of a train, then the jury are instructed that to look at a point where said train could not be discovered a sufficient distance from said crossing to avoid colliding with it, or to listen under conditions where the approach of said train could not be heard was not the exercise of ordinary care, but that ordinary care under such conditions required them to look at a point where looking would avail them, or to listen under conditions where listening would warn them, if danger approached."

These instructions were rejected by the trial judge although he gave other instructions embodying in part the same principles. Appellants now insist that in so rejecting the offered instructions the trial judge committed reversible error, because the instructions given by the court, appellants argue, did not contain the phrase in the offered instructions, reading "*and to do this at such time and place as would enable said Davis and said decedents to discover the approach of a train if one was approaching, and to avoid being struck by it.*" This clause in the instructions follows immediately that part which told the jury that "it was the duty of the plaintiff Davis and the two decedents in approaching the crossing referred to in the evidence, to use such care as may be usually expected of ordinarily prudent persons to learn of the approach of the train of the defendant, and to keep out of its way. Of course, it was the duty of appelle Davis and the two decedents to exercise reasonable care, or such care as ordinarily prudent persons usually exercise under like conditions to learn of the approach of a train and to keep out of its way, but it is not and never was the law in Kentucky that travelers upon a public highway, approaching a railroad crossing were bound at their peril to avoid coming in contact with passing trains. Such travelers are only required to exercise that degree of care which reasonably prudent persons, under like circumstances, usually employ for their own protection. The doctrine of "Stop, Look and Listen" was never adopted as part of the law of Kentucky. We have a very different rule. The statutes require the operatives of trains when approaching a public crossing on a highway, at grade, to sound a whistle or ring a bell at a point on the approach side of the highway not less than fifty rods from the said crossing and to sound the whistle or ring the bell continuously or alternatively from that

point to the said crossing, and if they fail to do so and a traveler upon the highway, in the exercise of ordinary care, is injured, the Director General, if in charge, or the railroad company is liable in damages. It must be remembered that counsel for appellants very frankly admit that there was enough evidence introduced by appellees in support of their contention that no signal, such as is required by the statutes, was given to entitle the case to go to the jury. There were several witnesses who testified that no highway signals were given by the train; while witnesses for the Director General testify that the signals were given. This evidence was submitted to the jury and the question was resolved in favor of appellees. This was the principal question presented by the evidence.

The instructions given by the court correctly presented the whole law of the case. The instructions offered by appellants were in part correct, but the italicised clause was an incorrect statement of the law of the case, and the trial judge properly refused to give the same to the jury.

The cases seem to have been carefully and properly tried, and while the verdicts sound on first statement rather large they are not so when considered in the light of all the evidence, nor are they flagrantly against the weight of the evidence, nor excessive.

Perceiving no error to the prejudice of the substantial rights of appellants, the judgments are affirmed.

Judgments affirmed.